IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EDNA WEBSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV101 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Edna Webster, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income on October 18, 2007, alleging a disability onset date of February

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

20, 2007. (Tr. 11, 139-52.)[2] Her applications were denied initially (Tr. at 83-87) and upon reconsideration (Tr. at 93-101). Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 102-03.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing on November 10, 2009. (Tr. at 11.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 19) and, on December 9, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2. There is no evidence in the record that the claimant has engaged in any substantial gainful activity since February 20, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: lumbar degenerative disc disease with radiculopathy, arthritis, fibromyalgia, asthma and major depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525(d), 404.1525, 404.1526, 416.925 and 416.926).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

2

occasionally and ten pounds frequently. The claimant needs a sit/stand option, and can only perform routine, repetitive work due to her complaints of depression and/or anxiety for which she is on medication. While the claimant has indicated that she take Plaquenil for lupus, the undersigned could find no such diagnosis in the record and certainly no reports of extensive treatment for such a disease.

(Tr. at 13-15.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC") and determined that Plaintiff was unable to perform any of her past relevant work. However, he found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 18.) The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 19.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8

5

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" in the period between her alleged onset date and the expiration of her insured status. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease with radiculopathy, arthritis, fibromyalgia, asthma, and major

---

hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

depression. (Tr. at 13.) The ALJ then found at step three that these impairments did not meet or equal a disability listing. Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform light work with a sit/stand option. He further found that she could only perform routine, repetitive work in light of her "depression and/or anxiety." (Tr. at 15.) Although the ALJ determined at step four that Plaintiff was incapable of returning to any of her past relevant work, he found at step five that Plaintiff could perform other jobs available in significant numbers in the national economy. (Tr. at 18.) Based on these findings, the ALJ concluded that Plaintiff was not disabled. (Tr. at 19.)

Plaintiff now argues that substantial evidence fails to support the ALJ's finding as to her mental capacity for work. Specifically, she contends that the ALJ "rejected every medical opinion of record regarding Plaintiff's mental limitations and instead [impermissibly] rendered his own medical opinion" in finding her capable of routine, repetitive work. (Pl.'s Br. [Doc. #11] at 10.) Plaintiff correctly asserts that an "ALJ [is] not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "As a lay person . . . [an ALJ is] simply not qualified to interpret raw medical data in functional terms." Id.; see also Grimmett v. Heckler, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (finding that an "ALJ simply does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained professional"); Farrar v. Astrue, No. 3:11cv457, 2012 WL 3113159, at *10-11 (E.D. Va. July 13, 2012) (unpublished) (finding that the ALJ erred in rejecting four different medical opinions and instead formulating his own RFC based on the raw medical evidence). Because the ALJ in the present

7

case (1) expressly interpreted the raw data from Plaintiff's treatment notes to discredit the opinions of the psychiatric consultants and (2) used the raw data to formulate an RFC which is unsupported by the uncontroverted opinion evidence in this case, the Court finds that remand is required.

The ALJ explicitly assigned little weight to the mental health opinions provided by the consulting psychologist, Susan Hurt, and two Disability Determination Services ("DDS") consultants, Drs. Lori Souther and Nancy Herrera. (Tr. at 17.) These three sources constituted the only mental health opinions of record. In the decision, the ALJ noted that Dr. Hurt "opined that [Plaintiff] could learn and retain simple instructions but could not follow through on tasks effectively or withstand the stress and pressures of routine work activity." (Tr. at 17, 506.) The ALJ further noted that both DDS consultants, relying in part on Dr. Hurt's opinion, found Plaintiff "capable of only performing simple, routine, repetitive tasks with limited public contact. (Tr. at 17, 525, 594.) Dr. Herrera's opinion included further restrictions to a stable work setting with limited public contact (Tr. at 594), while Dr. Souther similarly recommended a low-stress setting with minimal social demands (Tr. at 525). Significantly, the ALJ omitted any mention of a stable or low-stress environment from his summation of the DDS opinions. He also failed to offer any reason to discredit either these limitations or the social restrictions opined by Drs. Herrera and Souther, other than asserting that Plaintiff's overall mental "condition quickly improved with treatment to where she had few, if any, mental health symptoms and limitations." (Tr. at 17.)

Defendant contends that, even in the absence of opinion evidence, the record as a whole supports the ALJ's findings. Indeed, the regulations require an ALJ to assess the entire record to determine a claimant's RFC, including not only opinion evidence, but also the claimant's "complete medical history" and statements from all sources regarding her abilities. 20 C.F.R. §§ 404.1454(a)(3), 416.945(a)(3). Here, the ALJ specifically stated at the hearing that he would give greater credence to Plaintiff's longitudinal treatment records, which provided a monthly record of her mental health progression over the course of two years, than to the one-time snapshot of her condition provided by Dr. Hurt. (Tr. at 66.) In his written decision, he did just that. (Tr. at 17.) In particular, the ALJ noted a number of occasions in 2008 and 2009 on which Plaintiff reported a general decline in her depressive symptoms, as reflected in the underlying medical records. However, Plaintiff's treatment records also note many times throughout the relevant time period when Plaintiff continued to suffer from various depressive symptoms, including depressed mood, crying, irritability, lack of motivation and energy, and isolating behavior, particularly when faced with stressful situations. (Tr. at 596, 597, 602, 613, 692, 701.) The ALJ acknowledges none of this contrary evidence, and his attempt to give Plaintiff "the full benefit of the doubt" by finding her limited to routine, repetitive work fails to meaningfully address the need for (1) a stable and/or low stress work environment and (2) limited public contact and/or social demands, as posited by the mental health opinions. Again, this is not a situation in which the record contains conflicting opinions; rather, the three opinions in question all include work restrictions beyond those addressed by the ALJ. Accordingly, substantial evidence fails to support the ALJ's mental RFC finding.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further consideration of Plaintiff's RFC. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 15th day of August, 2014.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge
